**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Heriberto Lopez, M-30719 | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 3:18-cv-50255 |
| v. | ) | |
| | ) | Honorable Iain D. Johnston |
| Anthony Wills,[1] | ) | |
| Warden, Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Heriberto Lopez is currently incarcerated at Menard Correctional Center,

serving five consecutive sentences of ten years each on five counts of criminal sexual assault of

his step-daughter. Lopez has petitioned this Court for a writ of habeas corpus under 28 U.S.C.

§ 2254. For the below reasons, this Court denies the petition for a writ of habeas corpus [1] and

declines to issue a certificate of appealability.

## I. BACKGROUND

The Court presumes that the factual determinations of the last state court to adjudicate the

case on the merits are correct for the purpose of habeas review unless those findings are rebutted

by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811,

815 (7th Cir. 2012) ("After AEDPA, we are required to presume a state court's account of the

facts correct, and the petitioner has the burden of rebutting the presumption of correctness by

clear and convincing evidence."). Petitioner has not pointed to clear and convincing evidence to

contradict the factual findings of the Appellate Court of Illinois, which was the last state court to

---

[1] Warden Anthony Wills at Menard Correctional Center has been automatically substituted as the Respondent pursuant to Fed. R. Civ. P. 25(d).

have adjudicated his case on the merits. *People v. Lopez*, 2014 IL App. (2d) 121008-U (Jun. 10, 2014) (unpublished) (hereinafter "*Lopez I*"); *People v. Lopez*, 2017 IL App. (2d) 150531-U (May 15, 2017) (unpublished) (hereinafter "*Lopez II*"). Thus, the Court thus adopts the state court's recitation of the facts and begins by summarizing the circumstances leading up to Lopez's conviction and sentencing.

**A. Factual Circumstances Leading to Petitioner's Conviction in State Court**

Petitioner Lopez married Melissa Levin around 1998. *Lopez I*, ¶ 14. Lopez became a step-father to Melissa's children from a previous relationship, including her daughters ML and KL, and her son JL. In March 2008, ML died of suicide in the bedroom she shared with KL. *Id.* Following ML's death, Melissa's children slept together on the living room floor, and eventually moved their beds into the bedroom Melissa shared with Lopez. Melissa began working additional hours as a nurse after ML's death, and she testified that her relationship with Lopez, including their sex life, deteriorated. *Id.*

On June 17, 2011, after JL saw KL and Lopez go into the bedroom and lock the door, he heard slapping and kissing and bed noises, Lopez's voice saying, "touch it," and KL's voice responding, "no." *Id.* ¶ 13. The next day, JL called the police to report the what he heard the previous day between his sister and their step-father. *Id.* ¶ 4. When the police arrived, KL, who was sixteen-years-old at the time, confirmed the sexual abuse and stated that it had been ongoing approximately six to eight times per month since she was twelve—always when her mother Melissa was not home. *Id.*

According to KL, the first occurrence was in May 2008 when Melissa was at work and her brothers were asleep. *Id.* ¶ 6. KL began talking to Lopez because she couldn't sleep. Lopez then undressed her and removed his own clothes. *Id.* He then inserted his erect penis into her

vagina. She said it hurt, but that it did not go all the way in. Lopez then dressed himself, told KL not to tell anyone, and went to bed. *Id.* Another time, while she was still twelve years old, KL told Lopez she did not want to go into the bedroom with him, but he punched her head, so she did as he directed. *Id.* ¶ 7. On other occasions, Lopez held hair clippers and threatened to shave her head if she resisted or ripped her earrings out of her ears. *Id.* Eventually, she stopped resisting. *Id.* ¶ 9.

KL explained that while the initial occurrences fell short of intercourse, within a few weeks he was fully inserting his penis into her vagina. *Id.* ¶ 8. At this point, Lopez never wore condoms with KL, and if he ejaculated, it was into a towel that he immediately put into the laundry. *Id.* Sometimes, he would give her hickeys on her neck and tell her to explain that her younger siblings were "sucking on her neck" if anyone asked. This went for more than three years, six to eight times a month. *Id.* ¶ 9. When KL was fifteen, she began menstruating. *Id.* ¶ 10. She told Lopez about this in the hopes that the sexual relations would stop. They did not stop. Lopez simply began using condoms. *Id.*

At one point, Melissa became suspicious of the hickeys on KL's neck. She asked both Lopez and KL if they were having sex, and both denied it. *Id.* ¶ 15. Lopez continued sexual relations with KL until June 17, 2011, the day before JL contacted the police.

After JL's initial report, officers searched Lopez's home and did not find any relevant evidence, but on June 21, 2011, Melissa called the detective because she found several condoms in one of Lopez's socks in a drawer—and Lopez never used condoms with Melissa. *Id.* ¶ 16. An arrest warrant was issued for Lopez. *Id.* ¶ 17. Officers eventually apprehended Lopez in Carpentersville, Illinois after he lied to them about his identity and whether he had identification on him. *Id.*

**B. Litigation, Sentencing, and Post-Conviction Appeals**

Lopez retained Michael Crosby and Dennis Steeves of A Law Firm of Crosby and Associates, P.C. (ALOCA), who were also representing him in his divorce and another matter. He executed three separate representation agreements with ALOCA, and on June 21, 2011, and the agreement pertaining to this case only included representation through trial. Lopez executed a limited, durable power of attorney form, prepared by ALCOA and notarized by Michael Crosby, appointing ALCOA as his agent and attorney to "discuss, inquire, assist and transfer assets and withdraw funds from any of my accounts, in regards to helping me secure legal representation and to arrange bond." *See, e.g.*, Dkt. 19-14, at 296. This POA was effective until revoked by Lopez. *Id.*

Lopez maintained his innocence and refused to accept a plea from the government. And because ALOCA's representation agreement with Lopez was only effective through plea negotiations, not trial, Steeves filed a motion to withdraw from the case immediately after Lopez rejected the plea, citing a "breakdown in the attorney/client relationship . . . in that the terms of representation have expired." Dkt. 19-13, at 48. Judge Engelsma denied the motion and cautioned that the practice "seem[ed] coercive" and stated that he would "not permit that kind of representation again . . . ever." Dkt. 19-16, at 129:9-13.[2]

The matter proceeded to trial before Judge Tobin of the Circuit Court of the Seventeenth Judicial District of Illinois, Boone County. Defense counsel Steeves argued that Petitioner was innocent and that the state failed to offer evidence beyond a reasonable doubt because there was no proof other than the victim's testimony. Though he presented no case-in-chief, evidence, or witnesses, the record shows that Steeves filed motions in limine, made objections throughout,

---

[2] The Court agrees with Judge Engelsma. This is shocking behavior by counsel.

cross- and re-cross- examined the state's witnesses, and made opening and closing arguments. Dkt. 19-14, at 129-36; dkt. 19-17, at 246, 298, 302, 350, 362, 377. The state advanced the theory that Lopez was a strict disciplinarian in the home, that KL became his victim similar to what ML must have gone through before her death, and that she never told anyone as a result of his threats. *See, e.g.*, *Lopez I*, ¶ 25. Lopez argued that this was pure speculation for which the state had no evidence, other than KL's testimony.

On April 5, 2012, Lopez was convicted by a jury of five counts of criminal sexual assault. After the jury returned its verdict, Steeves filed a motion for a directed verdict or new trial. Dkt. 19-14, at 134-35. And at sentencing, Steeves secured a sex offender evaluation for Lopez, although his motion to merge counts for the purposes of sentencing was denied. Dkt. 19-14, at 96, 111-13, 135-36. On July 20, 2012, Judge Tobin sentenced Lopez to a term of fifty years' imprisonment. Lopez's motion to reconsider the sentence was denied on September 14, 2012.

On direct appeal, Petitioner was represented by the State Appellate Defender and raised one claim: whether the state's *voir dire* questioning denied Lopez the right to a fair trial. On June 10, 2014, the Appellate Court of Illinois affirmed the judgment of the trial court. *Lopez I*. On August 13, 2014, Lopez filed a pro se petition for leave to appeal ("PLA 1") with the Illinois Supreme Court, which was denied. *People v. Lopez*, 21 N.E.3d 717 (2014) (table).

On April 27, 2015, Lopez filed a *pro se* petition for post-conviction relief, raising nineteen claims, including each of the claims raised in this habeas petition. Dkt. 19-14, at 180. On May 6, 2015, Judge Tobin summarily dismissed this petition as frivolous and for failure to raise the gist of a constitutional issue. Dkt. 19-8, at 41. After filing notice of appeal, the State Appellate Defender was appointed, and Lopez appealed the dismissal of his post-conviction petition, arguing that his petition raised the gist of a constitutional claim, specifically with regard

to three claims: ineffective assistance of trial counsel for misinforming Lopez of his right to testify, ineffective assistance at sentencing, and a conflict of interest at sentencing. Dkt. 19-8. The appellate court affirmed the denial of his post-conviction petition on May 15, 2017, and modified its order on August 7, 2017 after denying Lopez's petition for rehearing. *Lopez II*. On September 21, 2017, Lopez filed a pro se petition for leave to appeal ("PLA 2") with the Illinois Supreme Court, arguing that his post-conviction petition did present a gist of a constitutional claim—specifically trial counsel's ineffectiveness and conflict of interest at sentencing. Dkt. 19-12. On November 22, 2017, the Illinois Supreme Court denied Lopez's petition. *People v. Lopez*, 93 N.E.3d 1085 (2017) (table).

On July 27, 2018, Lopez petitioned this Court for a writ of habeas corpus, raising the following eleven claims:

A.  His arrest and search violated the Fourth Amendment;

B.  Trial court erroneously allowed other crimes evidence, depriving him of a fair trial;

C.  The state's *voir dire* indoctrinated the jury and denied him an impartial jury;

D.  Evidence was insufficient to convict;

E.  Trial counsel acted under a conflict of (pecuniary) interest at trial and sentencing;

F.  Trial counsel was ineffective for:
    1.  Failing to raise Fourth Amendment arguments (claim A);
    2.  Failing to object to *voir dire* questions (claim C); and
    3.  Failure to object to state's use of flight as "consciousness of guilt";

G.  Appellate counsel (on direct appeal) was ineffective for:
    1.  Failing to raise Fourth Amendment arguments (claim A); and
    2.  Failing to raise trial court error (claim B); and

H.  Violation of his Sixth Amendment right to be present at "critical stages" of trial.

Dkt. 1, at 6-8, 19-20. Respondent argues that claims A, B, D, F1, F3, G1, G2, and H are procedurally defaulted because they were not fairly presented through a complete round of state review. Dkt. 18, at 8. The Court agrees. Of the remaining claims, Respondent also argues that C

and E are meritless and that F2 does not constitute cause and prejudice to overcome default. *Id.* at 11-17. The Court's analysis of those claims yields similar findings.

## II. LEGAL STANDARD

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* 407. The Court uses an objective standard to determine whether a state court's application of Supreme Court precedent is unreasonable. *Id.* 409; *Winston v. Boatwright*, 649 F.3d 618, 624 (7th Cir. 2011).

"[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion," a federal habeas court has a "straightforward inquiry." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The Appellate Court of Illinois's decision was the last reasoned opinion on the merits, and thus this Court will "simply review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Id.* A federal habeas court gives "great deference to the state courts' determinations." *Lentz v. Kennedy*, 967 F.3d 675, 688 (7th Cir. 2020). Thus, this Court does not ask whether the state court decision was correct or

agreeable; the only question is "whether the [state court] decision was unreasonably wrong under an objective standard." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc). Even if the petitioner presents a persuasive petition for relief, federal habeas relief is granted only if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102–03, (2011). "This standard is meant to be difficult to meet and is reserved for the 'rare' case." *Lentz*, 967 F.3d at 689 (quoting *Dassey*, 877 F.3d at 302). Federal habeas review is rooted in principles of comity and finality that "must yield to the imperative of correcting a fundamentally unjust incarceration." *Engle v. Isaac*, 456 U.S. 107, 135 (1982).

Additionally, the court must construe a petitioner's *pro se* filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). "A '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Frazier v. Varga*, 843 F.3d 258, 262 (7th Cir. 2016) (quoting *Erickson*, 551 U.S. at 94). Thus, *pro se* petitions for habeas corpus are "entitled to a liberal construction." *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004) (citing *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997) (finding a cognizable claim when a *pro se* petition includes "enough detail to describe a claim that is within the power of a federal court to address")).

## III. ANALYSIS

As a threshold matter, the Court must first determine whether any of Petitioner's federal claims are procedurally defaulted because they have not been presented through one round of state court review. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018).

**A. Exhaustion and Procedural Default**

A habeas petitioner in state custody must have "exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(A); *Snow*, 880 F.3d at 864. To exhaust one's remedies, a habeas petitioner "must assert his federal claim through one complete round of state court review, either on direct review or in post-conviction proceedings." *McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018). In Illinois, post-conviction review is "limited to constitutional matters that neither have been, nor could not have been, previously adjudicated." *People v. Hudson*, 745 N.E.2d 1246, 1250 (Ill. 2001) ("Any issues which could have been raised on direct appeal, but were not, are procedurally defaulted, and any issues which have previously been decided by a reviewing court are barred by the doctrine of *res judicata*."); *see also* 725 Ill. Comp. Stat. 5/122-1 *et. seq.*; *People v. Brisbon*, 647 N.E.2d 935, 937 (Ill. 1995). Therefore, a habeas petitioner in Illinois "must include his claims in a petition for leave to appeal to the Illinois Supreme Court" to fulfill this requirement. *Snow*, 880 F.3d at 864 (citations omitted). A petitioner's failure to timely raise federal habeas claims to the state supreme court "result[s] in a procedural default of those claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).[3]

---

[3] Although there is significant overlap between "exhaustion" and "procedural default," this Court recognizes that the two concepts have different applications. As Justice Alito explained the difference in *Woodford*:

> The law of habeas, however, uses terminology that differs from that of administrative law. In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default, although the habeas doctrines of exhaustion and procedural default "are similar in purpose and design and implicate similar concerns," *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 7 (1992); *see also Coleman v. Thompson*, 501 U.S. 722, 731–732 (1991). In habeas, state-court remedies are described as having been "exhausted" when they are no longer available, regardless of the reason for their unavailability. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996). Thus, if state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted

Thus, a federal habeas petitioner "must fairly present to each appropriate state court his constitutional claims before seeking relief in federal court." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). Claims are also considered procedurally defaulted—and, therefore, not cognizable on federal habeas review— when they are denied by a state court "based on an adequate and independent state procedural rule." *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018).

Even if claims have been procedurally defaulted, courts must review these claims in collateral proceedings when a defendant shows "cause for noncompliance" with the state procedural rule "and some showing of actual prejudice resulting from the alleged constitutional violation." *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977); *Hudson*, 745 N.E.2d at 1250 (finding this exception based on "fundamental fairness"). Thus, a habeas petitioner "may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of law." *Martinex v. Ryan*, 566 U.S. 1, 10 (2012); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) (the "cause and prejudice" test). A second exception applies only in "an 'extremely rare' and 'extraordinary case' where the petitioner is actually innocent of the crime for which he is imprisoned." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). In *Schlup*, the Supreme Court described this "actual innocence" exception as a gateway through procedural default, holding that "if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the

---

those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding. *Id.*, at 162.

*Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (cleaned up).

court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." 513 U.S. at 316; *Gomez*, 350 F.3d at 679 (describing this as the "fundamental-miscarriage-of-justice exception").[4]

Of Lopez's eleven individual claims in this petition, eight are procedurally defaulted. Claims A, B, D, F1, F3, G1, G2, and H were not presented through one complete round of state court review. Further, Lopez does not show sufficient cause nor actual prejudice as a result of this failure, and he has not presented evidence of actual innocence such that this Court cannot have confidence in the outcome of the trial verdict.

### 1. Defaulted Claim A: Fourth Amendment Search Violations

Lopez argues that his Fourth Amendment rights were violated when law enforcement obtained an arrest warrant for him on June 18, 2011, but did not obtain "the necessary legal authority" to use his cell phone in order to pinpoint his exact geographical location. Dkt. 1, at 6-7. Lopez's his reliance on *In re Application of the United States of America for an Order Relating to Target Phone 2*, 733 F. Supp. 2d 939 (N.D. Ill. 2009), is misplaced. Although law enforcement's use of CSLI may constitute an unlawful search under the Fourth Amendment, the Seventh Circuit has recently held that "the collection of [a suspect's] real-time CSLI did not constitute a search" when the CSLI information was obtained in real-time and used for only a few hours to find a suspect's public location, not to peer into private details of one's life. *United States v. Hammond*, 996 F.3d 374, 389 (7th Cir. 2021); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2217, 2220 (2018) (holding that law enforcement's use of historical CSLI constitutes a search and suggesting that limited use of real-time CSLI is similar to tailing a

---

[4] While *Schlup* was decided pre-AEDPA, the statute only supersedes the decision with regard to successive habeas petitions, which are not present here.

vehicle before arrest). Even if the search was not supported by probable cause, law enforcement obtained the CSLI on June 18, 2011, and used that information in real-time to locate and apprehend him *on that same day*. Therefore, like *Hammond*, Lopez's real-time CSLI was used only for a matter of hours and did not constitute a search.

Further, Lopez had a full and fair opportunity to litigate these in state court and did not. Even if this claim were exhausted in state court, *Stone v. Powell*, 428 U.S. 465 (1976) may indeed have precluded further consideration of this claim. *Wallace v. Duckworth*, 778 F.2d 1215, 1219 n.1 (7th Cir. 1985). This claim is not present in his direct appeal, PLA 1, his post-conviction appeal, or PLA 2. It is only found in his petition for post-conviction relief, *see* dkt. 19-14, at 276-88, which was denied for failing to raise the gist of a constitutional claim and never addressed on the merits, *see* dkt. 19-8, at 44. Therefore, because Lopez did not exhaust his state remedies by presenting this claim through one complete round of state court review, this claim is defaulted for the purposes of federal habeas review. And, Lopez has neither presented sufficient cause and prejudice nor evidence of actual innocence so as to excuse default.

## 2. Defaulted Claim B: Trial Court Error (Other Crimes)

Lopez claims that the trial court improperly admitted "other uncharged criminal acts evidence," and that this evidence prejudiced him because it was used to "bolster witness credibility and to inflame the jury." Dkt. 1, at 6, 8. These other crimes, according to Lopez, were the allegations of physical abuse stated by KL during her testimony. *Id.* Lopez further argues that the trial court "did not properly apply the balancing test to determine *if* the prejudicial value outweighed the probative value" of the evidence. *Id.* at 8.[5] But again, Lopez did not exhaust this

---

[5] The Court reads this misstatement of Rule 403 as an evidentiary challenge. *See* Ill. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

claim in state court, in his direct appeal, PLA 1, his post-conviction appeal, or PLA 2. This claim only appears in his post-conviction petition, where it is styled as a claim of prosecutorial misconduct Dkt. 19-14, at 216-55. Because Lopez did not exhaust this claim through one complete state round of review, and he has offered neither cause and prejudice nor evidence of actual innocence to excuse the failure to exhaust, this claim is defaulted on federal habeas review. Even if it were not defaulted, this Court gives great deference to the determinations of the state courts on issues of state evidentiary law. *See* dkt. 19-8, at 44 (denying the issue in Lopez's post-conviction petition for failure to raise a gist of a constitutional claim.).

### 3. Defaulted Claim D: Insufficient Evidence

Lopez argues that the evidence presented by the state at trial was insufficient to convict him, specifically arguing that there was "no substantial physical evidence" to corroborate KL's testimony and that a fairminded juror could find reasonable doubt as to the charged offense. Dkt. 1, at 19. But this is not the standard for sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (A petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."); *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable."); *Galloway v. United States*, 319 U.S. 372, 395 (1943) ("[T]he essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.").

Further, Lopez has failed to exhaust this claim through one complete round of state court review. This claim does not appear in his direct appeal, PLA 1, his post-conviction appeal, or PLA 2. It is only found in his petition for post-conviction relief, *see* dkt. 19-14, at 322-44, which was denied for failing to raise the gist of a constitutional claim and never addressed on the merits, *see* dkt. 19-8, at 45. Therefore, the federal court cannot disagree with the state court's decision, nor can it determine whether it was reasonable. This claim was not exhausted, and is therefore defaulted for the purposes of federal habeas review. Lopez has neither presented sufficient cause and prejudice nor evidence of actual innocence so as to excuse his default. Even if it were not defaulted, the Court defers to the determinations of the state courts, which have found this claim without merit. Dkt. 19-8, at 45 (denying issue on post-conviction petition for failure to state the gist of a constitutional claim); *Lopez I*, at *36 ("We further find that the evidence in this case was not closely balanced.").

### 4. Defaulted Claims F1, F3, G1, G2: Ineffective Assistance of Counsel (IAC)

To succeed on an ineffective assistance of counsel claim, a petitioner must show "that counsel's performance was . . . objectively unreasonable under the circumstances" and that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Claims of ineffective assistance of counsel may excuse procedural default, although that is not always the case. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding "that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted" unless "the prisoner can satisfy the cause-and-prejudice standard with respect to [the ineffective-assistance-of-counsel] claim").

Before this court can address the merits with respect to Lopez's ineffective assistance claims, a review of the state court record is necessary to determine whether the claims themselves have been fully presented through one complete round of state court review.

### a. F1: IAC (Trial) for Failure to Raise Claim A

Lopez argues that his trial attorney Steeves was ineffective because he failed to raise any Fourth Amendment claims related to the police's use of his cell-site location information (CSLI) to locate and apprehend him. Dkt. 1, at 6-7. Lopez seems to argue that his trial counsel's failure to object to the use of CSLI or failure to move to suppress this evidence constituted ineffective assistance. However, the Court cannot fault counsel for failing to raise a meritless claim. *See, e.g.*, *Smith v. Robbins*, 528 U.S. 259, 288 (2000). As before, Lopez has failed to present this claim through one complete round of state review. It does not appear in the direct appeal or PLA 1, and even though the post-conviction appeal and PLA 2 include ineffective assistance of counsel claims, they are without facts relating to Fourth Amendment search. This claim only appears in Lopez's post-conviction petition, dkt. 19-14, at 365-68, which was dismissed for failure to raise the gist of a constitutional claim, dkt. 19-8, at 45. And Lopez has neither shown cause and prejudice nor evidence of actual innocence sufficient to excuse this default. There is a strong presumption that counsel's decisions pertaining to trial strategy "fall within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Therefore, because the ineffective assistance of counsel claim with respect to the Fourth Amendment search was not exhausted in state court and is not excused, it is procedurally defaulted for federal habeas review.[6]

---

[6] Recent case law strongly suggests that a Fourth Amendment search did not occur here, so the Court is satisfied with its conclusion regarding default. *See, supra*, III(A)(1), III(A)(4)(a). Had this ineffectiveness claim been raised in the context of a cognizable and meritorious issue, the Court would need additional evidence to determine whether it indeed excuses default and prejudiced the petitioner.

### b. G1: IAC (Appellate) for Failing to Raise Claim A

Lopez also argues that his appellate counsel was ineffective for failing to raise any Fourth Amendment claims. Similarly, this claim is not present in his direct appeal, PLA 1, post-conviction appeal, or PLA 2. This claim appears without facts or details in his pro se post-conviction petition, dkt. 19-14, at 369, which was dismissed for failure to state the gist of a constitutional claim, dkt. 19-8, at 45. As this was not exhausted in one complete round of state court review, this claim is procedurally defaulted.

For both his direct appeal and his post-conviction appeal, the State Appellate Defender was appointed as counsel to represent him, and Lopez argues that both were ineffective for failing to raise the Fourth Amendment search issue. The Court recognizes that the facts surrounding this claim with respect to the direct appeal are troubling. The duration and frequency of communication with Appellate Defender Mundt is unclear from the state record, but Lopez's argument suggests that Mundt filed his brief in Lopez's direct appeal before consultation with Lopez—and certainly before Lopez received a copy of his trial transcripts. When a petitioner's failure to raise an issue *when he was represented by appointed counsel* constitutes procedural default and bars the petitioner from ever raising that claim again, it is concerning. As Justice Breyer opined in *Edwards*,

> Why should a prisoner, who may well be proceeding *pro se*, lose his basic claim because he runs afoul of state procedural rules governing the presentation to state courts of the "cause" for his not having followed state procedural rules for the presentation of his basic federal claim? And in particular, why should that special default rule apply when the "cause" at issue is an ineffective-assistance-of-counsel claim, but not when it is any of the many other 'causes' or circumstances that might excuse a failure to comply with state rules?

*Edwards v. Carpenter*, 529 U.S. 446, 458 (2000) (Breyer, J., concurring). In *Edwards*, the Court held that a prisoner's failure to properly exhaust an ineffective assistance of counsel claim in the state courts, "*i.e.*, a failure to comply with the State's rules for doing so, bars that prisoner from

ever asserting that claim as a 'cause' for not having complied with state procedural rules." *Id.* at 456. It is without question that Lopez failed to exhaust this claim in the state courts, and therefore, this claim is defaulted on federal habeas review and cannot be used to excuse default of the underlying claim.

### c. F3: IAC (Trial) for Failing to Object to "consciousness of guilt"

Lopez argues that trial counsel was also ineffective with regard to the state's assertion that Lopez's actions in fleeing the police was a sign of "consciousness of guilt." Dkt. 1, at 7. Lopez argues that this should not have been allowed and that Steeves failed to raise this in a post-trial motion. *Id.* This claim was also not exhausted through one round of state court review, as it does not appear in Lopez's direct appeal, PLA 1, post-conviction appeal, or PLA 2. This claim was only presented in his post-conviction appeal, dkt. 19-14, at 365-68, which was denied for failure to raise the gist of a constitutional claim, dkt. 19-8, at 45. Further, Lopez has not argued that default should be excused because he was prejudiced by counsel's error. Because he has not provided a valid excuse to overcome default, this claim is procedurally defaulted for the purposes of federal habeas review.

### d. G2: IAC (Appellate) for Failing to Raise Claim B

Lopez also argues that appellate counsel was ineffective for failing to raise the issue of trial court error on appeal. Dkt. 1, at 8. Specifically, Lopez claims that the state's elicitation of testimony concerning specific act of physical violence—and the state's use of that during closing arguments—deprived Lopez of a "fundamentally fair trial." *Id.* Lopez did not raise the issue of appellate counsel's effectiveness through one complete round of state court review. It did not appear in his pro se PLA 1, post-conviction appeal, or PLA 2. This issue was presented without facts or details in his post-conviction appeal, dkt. 19-14, at 369, which was denied for failure to

raise the gist of a constitutional claim, dkt. 19-8, at 45. Therefore, because it was not exhausted in one round of state court review and Lopez has made no argument as to cause and prejudice that would excuse default, this claim is procedurally defaulted for the purposes of federal habeas review.

### 5. Defaulted Claim H: Sixth Amendment Right to be Present Violation

Lopez argues that his "constitutional right to be present and to participate in all substantial stages of trial" pursuant to the Sixth Amendment was violated when Steeves waived his presence without Lopez's knowledge or consent. Dkt. 1, at 20. Specifically, Lopez claims that he should have been permitted to be present during several conferences with the trial judge regarding motions in limine, jury instructions, and *voir dire*. *Id.* Again, Lopez did not raise this claim in his direct appeal, PLA 1, post-conviction appeal, or PLA 2. It was only present in his post-conviction petition, dkt. 19-14, at 201-209, which was denied for failure to raise the gist of a constitutional claim because hearings dealing with legal questions and not substantial rights do not require a defendant's presence, dkt. 19-8, at 43 (citing *People v. Martine*, 478 N.E.2d 262, 266 (1985)). Lopez has failed to exhaust this claim through one complete round of state court review, and this failure is not excused by evidence showing cause and prejudice or actual innocence. Thus, the claim is procedurally defaulted on federal habeas review.

### B. Claims Exhausted in State Court

The remaining claims were each exhausted through one complete round in state court and are, therefore, ripe for this Court's review. Claims C and F2 were addressed by the Appellate Court of Illinois in *Lopez I*, 2014 IL App. (2d) 121008-U (Jun. 10, 2014) (unpublished), and Claim E was addressed in *Lopez II*, 2017 IL App. (2d) 150531-U (May 15, 2017) (unpublished).

### 1. Claim C: Denial of Impartial Jury Based on *Voir Dire* Indoctrination

Lopez argues that he was denied this right when the state asked several questions of the venire that served to indoctrinate jurors and "pre-argue" the state's theory of the case. Dkt. 1, at 19. In his habeas petition, Lopez does not identify the specific questions he challenges, though they are identified in his direct appeal and PLA 1. *See* dkt. 19-2, at 19-21; dkt. 19-5, at 6-7.

The Sixth Amendment guarantees a criminal defendant the right to a trial by an impartial jury. U.S. Amend. VI. In Illinois, the "purpose of voir dire is to assure the selection of an impartial jury, and the scope of permissible questioning during voir dire is properly left to the sound discretion of the trial court." *People v. Bommersbach*, 593 N.E.2d 783, 786 (Ill. App. Ct. 1992) (citations omitted). The jury selection process "may not be used as a means for pre-educating and indoctrinating prospective jurors as to a particular theory or defense." *Id.* On review, the appellate court asks whether the means used to gauge impartiality "created a reasonable assurance that prejudice would be discovered if present." *Id.* There is no established Supreme Court precedent on this specific issue, other than the Sixth Amendment's guarantee of an impartial jury. *See, e.g.*, *Morgan v. Illinois*, 504 U.S. 719, 730 (1992) ("The exercise of the trial court's discretion, and the restriction upon inquiries at the request of counsel, are subject to the essential demands of fairness." (cleaned up)).

Here, the Appellate Court of Illinois reviewed the *voir dire* issue for abuse of discretion, because the manner and scope of *voir dire* is within the discretion of the trial court. *Lopez I*, ¶ 23. The court acknowledged that "specific questions tailored to the facts of the case and intended to serve as 'preliminary final argument' are generally impermissible." *Id.* at ¶ 24 (citing *People v. Mapp*, 670 N.E.2d 852, 860 (Ill. App. Ct. 1996). Relying on *People v. Rinehart*, 2012 IL 111719, 962 N.E.2d 444 (Ill. 2012), the appellate court examined two categories of questions: (1) about

sexual abuse cases in general; and (2) about specific facts of the case. *Lopez I*, ¶ 29. The first

category included the following questions:

> (1) whether the jurors believed that child abuse existed and that adults molest children;
> (2) whether the jurors had stereotypes of what kind of person would be a sex offender;
> (3) whether one could be spotted just by seeing them;
> (4) whether a sex offense would take place more in private or more in public; and
> (5) whether you agree that, because this is private, that narrows down the number of possible people who can see it.

*Id.* The court found that these were broad questions designed to uncover potential bias, which did

not serve to indoctrinate the jury to the state's theory or to pre-argue the case. *Id.* The second

category included questions pertaining to a victim's reluctance to report a crime, such as

"whether adults and children would be reluctant to talk about sex with people they do not know"

and "whether you would be surprised if a victim of a sex offense was reluctant to talk about it."

*Id.* at ¶ 30. The court found that although these questions "could be tied to the specific facts of

this case, they also can be seen as attempting to uncover bias regarding delayed reporting." *Id.*

Further, the Appellate Court of Illinois found that these questions "did not touch on any defense,

law, or instructions," and that they were "less fact-driven, more focused on potential jurors'

preconceptions about sexual assault cases in an effort to uncover any bias regarding delayed

reporting and the credibility of a victim who . . . informed no one about the alleged attacks when

they happened." *Id.* at ¶ 33.

      The court identified two challenged questions that did not quite fit into either category:

"(1) whether the [potential] jurors believed that it was possible for a person to love and care for

someone who abused them; and (2) whether, for the most part, when people lie, they have a

reason for lying." *Id.* at ¶ 34. The first question was found to be similarly tied to uncovering bias

as to delayed reporting of abuse, and neither question served to indoctrinate the jury or pre-argue

the state's theory. *Id.* Additionally, the court noted that the state presented no evidence regarding these two specific issues, nor did they argue this point during closing arguments. *Id.* And if that was not enough, the appellate court reasoned in the alternative that, "even if we were to find the trial court abused its discretion by permitting the State to pose the two questions, defendant has not established plain error or ineffective counsel." *Id.* at ¶ 35. The court continued to explain that their conclusion that the jury remained fair and impartial was based on "the nature of the questions," "the fact that the prosecutor only asked the second question of two empaneled jurors," and "the fact that the jury found defendant *not* guilty on two counts." *Id.*

The Appellate Court of Illinois's analysis of this issue was thorough and reasonable, not contrary to any established Supreme Court Sixth Amendment precedent. This Court gives deference to the factual determinations of the state court proceedings, which were not unreasonable. Lopez has not presented clear and convincing evidence rebutting the state's determination here. Thus, Lopez's claim of denial of his Sixth Amendment right to an impartial jury is denied.

### 2. Claim F2: Ineffective Assistance for Failing to Preserve Claim C

Claims of ineffective assistance of trial counsel add another layer of deference to this Court's review beyond the deference owed with habeas. A petitioner must show "that counsel's performance was deficient," in that it was "objectively unreasonable under the circumstances," and the petitioner must also show that counsel's "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Even when a state decision is "at odds with 'the federal court's

conception of how *Strickland* ought to be applied in that particular case,'" a federal habeas court

must give deference to the state court's determinations. *Laux v. Zatecky*, 890 F.3d 666, 674 (7th

Cir. 2018) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)). This Court's review is doubly

deferential. *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) ("The question is not whether

counsel's actions were reasonable.") Therefore, this Court asks "whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562

U.S. 86, 105 (2011).

An inquiry like this into counsel's performance and trial outcome depends "on the facts

of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S.

364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). In *Strickland*, the Supreme Court said,

> A fair assessment of attorney performance requires that every effort be made to
> eliminate the distorting effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct from counsel's
> perspective at the time. Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance; that is, the defendant
> must overcome the presumption that, under the circumstances, the challenged
> action might be considered sound trial strategy.

466 U.S at 689 (internal quotations omitted). *Strickland* mandates that this Court adopt "a 'strong

presumption' that counsel's conduct falls within the wide range of reasonable professional

assistance." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689). This

first prong is designed to be deferential, because, "it is all too easy to conclude that a particular

act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at

702. Under the second prong, *Strickland* requires that the petitioner "show[s] that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.*; *Allen*, 555 F.3d at 600.

In Illinois, criminal defendants may secure appellate review of a procedurally forfeited trial error through the plain-error doctrine. *People v. Walker,* 902 N.E.2d 691, 697 (Ill. 2009). This doctrine allows a court to review unpreserved error in two circumstances, both requiring the presence of an error as an initial prerequisite:

> (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error; or
>
> (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.

*Id.* (quoting *People v. Piatkowski*, 870 N.E.2d 403, 410-11 (Ill. 2007)).

Here, Lopez argues that defense counsel Steeves was ineffective because he did not object to the state's line of questioning or raise it in a post-trial motion, thereby preserving the *voir dire* issue for trial. He claims that this constitutes plain error and ineffective assistance of counsel, excusing his forfeiture of the claim.[7] Dkts. 19-2, 19-5. The appellate court concluded that no such error existed and that Lopez's claim of ineffective assistance must fail. *Lopez I*, ¶ 22.

*Strickland*'s highly deferential standard requires that Petitioner show that this conduct was both objectively unreasonable under the circumstances *and* that but for this conduct, the result would have been different. This is an extremely high burden to overcome, and the appellate court found that Lopez could not satisfy the second prong of *Strickland* because there was no reasonable likelihood that the result of the proceedings would have been different if counsel objected to the state's questions. *Id.* at ¶ 36-37. Even if Lopez could show the second

---

[7] Given that *voir dire* is within the ambit of the trial judge and is reviewed for abuse of discretion, the Court questions the validity of this claim (F2) presented as ineffective assistance of counsel. However, since the Court finds Claim C without merit, Lopez is unable to establish prejudice, so this line of analysis is unnecessary.

prong of *Strickland*, he cannot show that counsel's performance was deficient with regard to *voir dire*. When evaluating counsel's effectiveness, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. There is a strong presumption that counsel's conduct with respect to the *voir dire* questioning was effective, as the Appellate Court of Illinois found, and Petitioner has not laid out any supporting arguments to show otherwise. And yet again, the Court cannot fault counsel for failing to raise an issue that is meritless. Thus, Petitioner's claim of ineffective assistance of counsel (claim F2) is denied.

### 3. Claim E: Trial Counsel's Conflict of Interest

Lopez claims that his trial counsel was ineffective because he was operating "under an actual conflict of interest during trial and sentencing." Dkt. 1, at 20.[8] Specifically, Lopez argues that attorney Steeves was conflicted after he moved to withdraw when Lopez refused to accept a plea and had no additional money to pay ALOCA's fee, but the judge would not allow his withdrawal. *Id.*

As stated above, counsel's performance is presumed to be effective. A criminal defendant must show not only that counsel's performance was deficient and objectively unreasonable under the circumstances, but also that that deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 688. When counsel is burdened by an actual conflict of interest that adversely affected his performance, prejudice is presumed. *Id.* at 692. And on habeas, he must show that the decision of the highest court of the state to review his claim on the merits was either contrary to or an unreasonable application of established Supreme Court precedent, or that the state's

---

[8] Although it appears that on post-conviction, Lopez only raised the conflict issue as it relates to sentencing, and not to trial representation, this distinction was not raised. So, the State waived the waiver. *See United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012).

decision was based on an unreasonable determination of the facts in the light of the evidence. 28
U.S.C. § 2254(d)(1)-(2).

Lopez first presented this issue in his petition for post-conviction relief. Dkt. 19-14, at
294-315. After it was summarily denied by Judge Tobin for failure to raise the gist of a
constitutional claim, the Appellate Court of Illinois affirmed, finding that Lopez forfeited his
claim regarding counsel's conflict of interest. *Lopez II*, 2017 IL App. (2d) 150531-U, ¶ 20 (May
15, 2017) (unpublished). The appellate court relied on Illinois case law explaining a criminal
defendant's right to "conflict-free representation," meaning "undivided loyalty" of counsel
"whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations."
*Id.* at ¶ 21. Then, the court explained the two types of conflict of interest recognized in Illinois:
per se conflict and actual (or potential) conflict. *Id.* at ¶ 22. Relying on *People v. Spreitzer*, 525
N.E.2d 30, 34 (Ill. 1988), the appellate court stated that for claims of an actual conflict of interest
a defendant must show "some specific defect in his counsel's strategy, tactics, or decision
making attributable to [a] conflict." *Lopez II*, at ¶ 23.

The Appellate Court of Illinois found that Lopez "never alleged any specific defect in
counsel's performance attributable to the conflict," and found that Steeves "zealously represented
defendant to the end." *Id.* at ¶¶ 24-25. Although the court recognized that Lopez did specify that
Steeves failed to call Lopez's sister to testify, it found that this was "speculative at best" because
Lopez, who was incarcerated and operating pro se, failed to submit an affidavit from his sister
with specific information about what her testimony would have been. *Id.* at ¶ 27. Because this is
before the Court on a petition under 28 U.S.C. § 2254(d), a writ cannot be granted unless the
state court's decision is "contrary to, or involved an unreasonable application of, clearly
established Federal law" or is "based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." In his pro se petition for post-conviction relief, Lopez lists twelve specific acts in support of his claim that he was adversely affected by counsel's conflict of interest, with supporting documentation including financial statements, signed powers of attorney documents, and correspondence with his financial institution. Dkt. 19-14, at 294-95. The appellate court only addressed the issue of his inability to pay fees, which prompted Steeves's motion to withdraw. *Lopez II*, ¶¶ 20-28. Based on this, and with the deference owed to state court determinations under § 2254(d) and *Strickland*, the Court denies Lopez's claim for counsel's conflict of interest.[9]

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when it enters a final order adverse to a petitioner. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing, the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). A certificate of appealability is a threshold issue, and a determination of whether one

---

[9] The Court acknowledges that the Appellate Court of Illinois did not address the other specific acts alleged in support of this claim—namely, that ALOCA allegedly forced Lopez into signing a limited, durable power of attorney allowing ALOCA to control all of his financial assets, deducting various amounts from Lopez's bank accounts and charging amounts to his credit card as payment for fees, and notarizing legal documents. Because those facts were not addressed, the Court cannot say whether the appellate court's decision was unreasonable or based on an unreasonable determination of those facts, but the allegations are nonetheless extremely concerning.

should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

As stated above, this Court is limited by the narrow standard in § 2254(d), which limits the scope of review to whether the state appellate court's decision is contrary to or an unreasonable application of established Supreme Court precedent. This Court has found that the decisions of the Illinois Court of Appeals with respect to Mr. Lopez are neither contrary to nor an unreasonable application of established Supreme Court precedent and does not find the decision debatable. A certificate of appealability will not issue.

## V. CONCLUSION

For the reasons stated herein, Petitioner Heriberto Lopez's petition for writ of habeas corpus is denied. A certificate of appealability will not issue. Final judgment shall enter.

Date:  June 28, 2021                    By: _____
                                        IAIN D. JOHNSTON
                                        United States District Judge